2005 ND 126

**Arthur N. ANDERSON and Ann Anderson, Plaintiffs, Appellants and Cross–Appellees**

v.

**Thomas D. SELBY, Defendant, Appellee and Cross–Appellant.**

**No. 20040289.**

Supreme Court of North Dakota.

July 13, 2005.

H. Malcolm Pippin, Nilles, Ilvedson, Stroup, Plambeck & Selbo, Ltd., Williston, N.D., for plaintiffs, appellants and cross-appellees.

Charles L. Neff, Neff, Eiken & Neff, P.C., Williston, N.D., for defendant, appellee and cross-appellant.

MARING, Justice.

[¶ 1] Arthur and Ann Anderson appealed from a summary judgment dismissing their action against Thomas Selby to reform a warranty deed to include a reservation of a flowage easement. Selby cross-appealed from the trial court's refusal to award him attorney fees for breach of warranty in defending the Andersons' action. We conclude the trial court erred in granting summary judgment on the Andersons' reformation claim, and we reverse and remand for further proceedings.

I

[¶ 2] On September 8, 2003, the Andersons and Selby executed an agreement for the Andersons to sell Selby a ten-acre parcel of land in the Andersons' Farm Unit 137 in the Buford–Trenton Irrigation District in Williams County for $20,000. A letter agreement, dated September 8, 2003, states the Andersons "will reserve any oil and gas rights and subsurface minerals," but does not reserve a flowage easement. On September 30, 2003, Selby offered to purchase the balance of Farm Unit 137, about 100 acres, from the Andersons for $155,500. Selby's offer to purchase did not refer to a flowage ease-ment. On October 23, 2003, the Andersons executed a warranty deed conveying Farm Unit 137 to Selby for $175,500 subject to "all prior exceptions, reservations, covenants, easements and rights-of-way in place or of record," and excepting and reserving to the Andersons "all oil, gas and all other minerals in" the land. The warranty deed did not reserve a flowage easement and was recorded on October 23, 2003.

[¶ 3] On August 18, 2003, the Andersons had offered the United States Army Corps of Engineers a flowage easement for Farm Unit 137. On October 20, 2003, the Corps of Engineers accepted the offer and agreed to pay the Andersons $292,150 for the flowage easement, which was described as the right "to overflow, percolate, saturate and submerge the subsurface and to raise the elevation of the water table ... in connection with the operation and maintenance of the Garrison Dam Project." The Andersons received notice of the Corps of Engineers' acceptance of their offer for a flowage easement on October 24, 2003.

[¶ 4] The Andersons sued Selby to reform the warranty deed to include a reservation of the flowage easement, claiming a mistake in the deed. Selby answered, claiming the warranty deed was clear and unambiguous and transferred all of the Andersons' right in Farm Unit 137 to him, except as specifically stated in the deed. Selby denied there was a mutual mistake regarding the flowage easement and claimed there were no grounds to reform the deed.

[¶ 5] Selby moved for summary judgment. He also sought attorney fees for the Andersons' breach of warranty and for removal of a lis pendens against the land. The Andersons filed a cross-motion for summary judgment. The trial court granted Selby's motion for summary judg-

ment, concluding the Andersons had failed to set forth specific facts showing there was a genuine issue of material fact for trial. The court decided the Andersons had failed to present specific facts to support their assertion that, in forming the contract between the parties, there was either a mutual mistake, or a mistake by Anderson which Selby knew or suspected. The court said the Andersons failed to show the plain language of the warranty deed did not reflect the parties' intentions when the deed was signed. The court ordered removal of the Andersons' lis pendens from the record title at their expense, but refused Selby's request for attorney fees for defending the Andersons' action.

II

[¶ 6] The Andersons argue the trial court erred in granting Selby's motion for summary judgment. They argue extrinsic evidence is admissible in a reformation action to show either a mutual mistake, or a mistake by them which at the time Selby knew or suspected. Selby responds, arguing summary judgment was appropriate because parol evidence is not admissible to contradict the clear language of the deed, and the Andersons' admissions establish there were no factual issues for trial.

[¶ 7] Summary judgment is a procedural device for promptly disposing of a lawsuit without a trial if either party is entitled to judgment as a matter of law, and if no dispute exists as to either the material facts or inferences which reasonably can be drawn from undisputed facts, or if the only issues to be resolved are questions of law. *Diocese of Bismarck Trust v. Ramada, Inc.*, 553 N.W.2d 760, 764 (N.D.1996). Whether a trial court properly granted summary judgment is a question of law subject to de novo review. *Riemers v. Omdahl*, 2004 ND 188, ¶ 4, 687 N.W.2d 445. The party moving for sum-

mary judgment has the burden to demonstrate there are no genuine issues of material fact. *Matter of Estate of Stanton*, 472 N.W.2d 741, 743 (N.D.1991). In considering a motion for summary judgment, the court may examine the pleadings, depositions, admissions, affidavits, interrogatories, and inferences to be drawn therefrom to determine whether summary judgment is appropriate. *Id.* In doing so, the court must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the evidence. *Id.* Additionally, the court must consider the substantive evidentiary standard of proof when ruling on a motion for summary judgment. *Id.* In considering the substantive standard of proof, the court must consider whether the trier of fact "could reasonably find either that the plaintiff proved his case by the quality and quantity of evidence required by the governing law or that he did not." *Stanton*, at 743 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[¶ 8] Section 32–04–17, N.D.C.C., provides for the equitable remedy of reformation:

When, through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention so far as it can be done without prejudice to rights acquired by third persons in good faith and for value.

[¶ 9] A party who seeks reformation has the burden to prove by clear and convincing evidence that the written agreement does not fully or truly state the agreement that the parties intended to

make. *Ell v. Ell,* 295 N.W.2d 143, 150 (N.D.1980). Each case involving a claim for reformation must be determined on its own facts and circumstances, and the court may properly look at the surrounding circumstances and take into consideration all the facts that disclose the parties' intentions. *Id.* In *Ell,* at 149–50 (citations omitted), this Court explained the role of parol evidence in a reformation action:

The parol evidence rule is not a rule of evidence, but rather, it is a rule of substantive law. The parol evidence rule is codified, in part, in section 9–06–07 of the North Dakota Century Code.

Section 9–06–07 provides that a written contract supersedes all prior or contemporaneous oral agreements or conditions concerning the subject matter of the contract, even though the contract is not required to be in writing. Nevertheless, it is well-established that parol evidence is admissible in a suit to reform a written instrument on the grounds of fraud or mutual mistake of the parties. Parol evidence is admissible not only to establish the alleged fraud or mistake, but also to correct the instrument to conform to the agreement or intention of the parties. Thus, reformation is a limitation on the parol evidence rule which is necessary to reach a just result. Any evidence which tends to show the true intention of the parties, whether it be evidence of conduct or declarations of the parties extrinsic to the contract or documentary evidence, is admissible.

We conclude, as did the trial court, that parol evidence is admissible in an action for reformation of a contract to establish fraud or mutual mistake as well as to show the true intention of the parties. To hold otherwise would render the parol evidence rule an instrument of the very fraud or mistake it was designed to prevent. In the absence of such a salutary exception to the parol

evidence rule, it would be virtually impossible to establish the grounds relied on for reformation.

[¶ 10] The Andersons claim the warranty deed mistakenly failed to reserve a flowage easement in the land because of a mutual mistake, or a mistake by them which Selby knew or suspected.

[¶ 11] Whether there has been a mistake sufficient to support a reformation claim is generally a question of fact. *See City of Fargo v. D.T.L. Props., Inc.,* 1997 ND 109, ¶ 16, 564 N.W.2d 274. In *First National Bank and Trust Co. v. Scherr,* 456 N.W.2d 531, 534 (N.D.1990), this Court said that although a contract may be clear and unambiguous on its face and extrinsic evidence is not admissible to contradict the clear and unambiguous terms of the contract, extrinsic evidence is nevertheless permissible in a reformation action to show the contract did not reflect the parties' true intent, because of fraud, mutual mistake, or a mistake by one party which the other party knew about or suspected.

[¶ 12] In *Mau v. Schwan,* 460 N.W.2d 131, 134–36 (N.D.1990), this Court discussed mistake in the context of a reformation action. This Court cited N.D.C.C. § 9–03–13 and said a mutual mistake that will justify reformation requires that, at the time of the execution of the agreement, both parties intended to say something different from what was said in the agreement. *Mau,* at 135. *See also Meyer v. McCormick, Inc.,* 445 N.W.2d 21, 24 (N.D. 1989); *Cokins v. Frandsen,* 141 N.W.2d 796, 799 (N.D.1966). *See generally* 66 Am. Jur.2d *Reformation of Instruments* § 21 (2001) (mistake cannot be mutual if the minds of the party did not meet in a common intent, and for a mutual mistake to justify the reformation of an agreement, it must be shown that, at the time of the execution of the agreement, both parties

intended to say something different from what was said in the instrument).

[¶ 13] The Andersons contend they intended to except a flowage easement from the deed, while Selby claims he acquired the flowage easement with the property. The warranty deed conformed to Selby's belief. We conclude the evidence does not support an inference of a mutual mistake in that both parties intended to say something different from what was said in the warranty deed.

[¶ 14] The Andersons nevertheless argue the evidence raises an inference that they made a mistake in not excepting a flowage easement from the warranty deed and Selby knew about or suspected their mistake. A mistake by one party which the other party knew about or suspected is sufficient to support a claim for reformation. N.D.C.C. § 32–04–17. *See Mau*, 460 N.W.2d at 135; *Scherr*, 456 N.W.2d at 534. *See also* 66 Am.Jur.2d *Reformation of Instruments* at § 27 (unilateral mistake may be basis for reformation when it is known by other party).

[¶ 15] In his affidavit, Arthur Anderson stated the $1,500 per acre price that he offered to sell the land to Selby for "was the going market price for land with a flowage easement on it, [and] Selby was well aware of this and it was understood and intended by all concerned that the sale price took into account a flowage easement." The Andersons claim they were in the process of conducting further discovery to establish land values, and a court may allow time to permit further discovery to establish disputed facts. *See* N.D.R.Civ.P. 56(f). Arthur Anderson's affidavit indicated the deed was signed at a time when the flowage easement had not yet been recorded, which was a mistake that Selby knew about. The deed was recorded on October 23, 2003, and was subject to reservations in place or of record, but the deed did not specifically reserve the flowage easement. According to Arthur Anderson, he immediately realized the flowage easement mistakenly had not been recorded as of October 23, 2003, and he explained the situation to Selby, who agreed he would sign over a flowage easement to the Andersons "as it clearly was a mistake, which he understood." According to Arthur Anderson, his conversation with Selby "was entirely consistent with the intentions of all concerned with respect to the underlying transaction, i.e. that the purchase price was for land with a flowage easement already in place in [the Andersons'] favor." The Andersons sold the land to Selby for $175,500, and during that process, they offered the Corps of Engineers a flowage easement for the same land, which was accepted for $292,150. Those price differentials support an inference that the Andersons intended to reserve a flowage easement when they executed the warranty deed. There is evidence in this record that both parties knew land owners in the area were entitled to flowage easements from the Corps of Engineers. There is also evidence that Selby told his real estate agent not to say anything about the flowage easement during the closing for the sale of the land. There is some evidence flowage easements were intended to compensate landowners for past damages and were not necessarily an aspect of future damages. Although the Andersons have the ultimate burden of proof to show by clear and convincing evidence that they are entitled to reformation because of a mistake which Selby at the time knew or suspected, we believe there is evidence in this record which supports an inference that such a mistake was made. We therefore conclude summary judgment was not appropriate on the Andersons' claim for reformation.

## III

[¶ 16] In his cross-appeal, Selby argues the trial court erred in refusing to award him attorney fees for breach of warranty in defending the Andersons' action. Selby argues he is entitled to his attorney fees for defending this action because the Andersons deliberately breached their warranty against encumbrances in the warranty deed.

[¶ 17] The "American Rule" generally assumes that each party to a lawsuit bears its own attorney fees. *Duchscherer v. W.W. Wallwork, Inc.*, 534 N.W.2d 13, 16 (N.D.1995). Successful litigants are not allowed attorney fees in North Dakota unless authorized by contract or by statute. *Danzl v. Heidinger*, 2004 ND 74, ¶ 6, 677 N.W.2d 924. Section 47–10–18, N.D.C.C., provides that whoever conveys real estate by a deed containing a covenant that the land is free of all encumbrances shall be liable for all damages sustained in removing the encumbrances. Although N.D.C.C. § 47–10–18 may entitle a party to attorney fees for a quiet title action, we conclude it does not authorize attorney fees for a reformation action, which is premised on a claim that a warranty deed does not reflect the parties' true intentions. We conclude Selby is not entitled to attorney fees for defending a reformation action by his grantor.

## IV

[¶ 18] We reverse the summary judgment and remand for proceedings consistent with this opinion.

[¶ 19] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.