Filed 4/30/09 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2009 ND 74

Farmers Union Oil Company 

of Garrison, d/b/a Cenex, Plaintiff and Appellee

v.

George A. Smetana, 

Carolyn J. Smetana, Defendants and Appellants

           and

Lewis Bauer, Constance T. Scheel,

and Constance M. Narad,                                                                               Defendants

No. 20080158

Appeal from the District Court of McLean County, South Central Judicial District, the Honorable Bruce B. Haskell, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Kapsner, Justice.

Michael Geiermann, Schulz Geiermann & Bergeson Law Offices, P.C., P.O. Box 2196, Bismarck, N.D. 58502-2196, for plaintiff and appellee.

James G. Wolff, Farhart Wolff, P.C., 600 22nd Avenue NW, Minot, N.D. 58703, for defendants and appellants.

Farmers Union v. Smetana

No. 20080158

Kapsner, Justice.

[¶1] George and Carolyn Smetana appeal from a district court summary judgment reforming a deed and quieting title to a disputed tract of property in favor of Farmers Union Oil Company of Garrison, doing business as Cenex (“Cenex”).  We reverse and remand for further proceedings, concluding the district court erred in determining that, as a matter of law, the Smetanas were not good faith purchasers for value.

I

[¶2] In the early 1990s, Cenex and Lewis Bauer owned adjacent properties in Garrison.  Bauer owned the northernmost 196 feet of Lots 13 and 14 in Block 1 of the McLean County Addition to the City of Garrison.  Cenex owned the remainder of Lots 13 and 14 lying south of Bauer’s property. There was a house on the northern end of Bauer’s property, and Cenex operated a convenience store and gas station on its part of the property.  

[¶3] In March 1992, Cenex contacted Bauer about purchasing a portion of his property.  Using a tree on Bauer’s lot as a reference point, Bauer and Cenex representatives “stepped off” the parcel to be sold and, using a tape measure, determined that the intended parcel was 116 to 117 feet long.  On March 30, 1992, Bauer executed a deed to Cenex conveying:

The Southern most 116 feet of the Northern most 196 feet of Lots Thirteen (13) and Fourteen (14) in Block One (1) of McLean County Addition to the City of Garrison, State of North Dakota, all in McLean County. 

By the terms of the deed, Bauer retained the northernmost 80 feet of Lots 13 and 14, including the house.  Bauer erected a fence adjacent to the tree, running east to west, marking what Cenex and Bauer believed to be the boundary between their properties.

[¶4] In 1996, Bauer sold his property, including the house, to Constance Scheel and Constance Narad.  In 2000, Scheel and Narad sold the property to the Smetanas.  Both deeds described the property transferred as the northernmost 80 feet of Lots 13 and 14.

[¶5] In 2005, the Smetanas learned that their house did not lie entirely within the northernmost 80 feet of Lots 13 and 14.  They hired a surveyor, who determined that approximately two-thirds of their house extended beyond the northern boundary of Lots 13 and 14, into a vacated street right-of-way owned by the City of Garrison.  According to the survey, the northern 80 feet of Lots 13 and 14 begins in the middle of the Smetanas’ house and extends 42 feet to the south of the fence which had been erected by Bauer.  After the discrepancies were discovered, the City of Garrison executed a quit claim deed transferring a fifty-foot wide strip directly north of Lots 13 and 14 to the Smetanas for one dollar.

[¶6] In 2007, Cenex brought this action seeking to quiet title to the disputed 42-

foot strip lying between the fence and the actual boundary line. The Smetanas counterclaimed, requesting that title to the disputed property be quieted in them and seeking damages for trespass.  Cenex moved for summary judgment, arguing Bauer and Cenex had intended that Cenex would receive all of the property up to the fence and seeking reformation of the original 1992 deed from Bauer to Cenex.  The district court found it was the intention of Bauer and Cenex that Cenex would purchase the property south of the fence and that the descriptions in the 1992 deed were the result of a mutual mistake. The court therefore ordered that the 1992 deed be reformed to indicate Cenex purchased property running 116 feet to the south “starting at the southern edge of the fence on the Smetana property,” and summary judgment was entered quieting title to the disputed parcel in Cenex.  

II

[¶7] The Smetanas have attempted to appeal from the district court’s “Order Granting Plaintiff’s Motion for Summary Judgment.”  An order granting summary 

judgment is not appealable.  
E.g.
, 
Alerus Financial, N.A. v. Western State Bank
, 2008 ND 104, ¶ 15, 750 N.W.2d 412; 
Wheeler v. Gardner
, 2006 ND 24, ¶ 6, 708 N.W.2d 908.  An attempted appeal from the order granting summary judgment will, however, be treated as an appeal from a subsequently entered consistent judgment, if one exists.  
Alerus Financial
, at ¶ 15; 
Wheeler
, at ¶ 6.  Because a consistent judgment was subsequently entered in this case, we will treat the Smetanas’ appeal as an appeal from the judgment.

III

[¶8] We outlined the relevant standards governing summary judgment in 
Hasper v. Center Mut. Ins. Co.
, 2006 ND 220, ¶ 5, 723 N.W.2d 409 (citations omitted):

Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law.  A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record.  On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law.  Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

[¶9] Although the district court purported to resolve this case on Cenex’s motion for summary judgment, the court issued “Findings of Fact, Conclusions of Law, and Order for Judgment,” including 54 separate findings of fact encompassing twelve pages.  In its brief on appeal, Cenex argues that “[s]ince this matter was subject to Summary Judgment, it is governed by the principles of Summary Judgment and the clearly erroneous rule under North Dakota Rule of Civil Procedure 52(a).”  Cenex thereby demonstrates a misconception of the fundamental principles governing summary judgment.

[¶10] On a motion for summary judgment, the district court’s “role is limited to determining whether the evidence and inferences to be drawn therefrom, when viewed in the light most favorable to the party opposing summary judgment, demonstrate that there are no genuine issues of material fact.”  
Heng v. Rotech Med. Corp.
, 2004 ND 204, ¶ 34, 688 N.W.2d 389.  This Court has repeatedly held that summary judgment is inappropriate if the court must draw inferences and make findings on disputed facts to support the judgment.  
See
 
Heng
, at ¶ 34; 
Campbell Farms v. Wald
,1998 ND 85, ¶ 11, 578 N.W.2d 96; 
Wachter Dev., L.L.C. v. Gomke
, 544 N.W.2d 127, 131 (N.D. 1996); 
Greenfield v. Thill
, 521 N.W.2d 87, 92 (N.D. 1994); 
Red River Human Servs. Found. v. State
, 477 N.W.2d 225, 229 (N.D. 1991); 
Brown v. North Dakota State Univ.
, 372 N.W.2d 879, 883 (N.D. 1985); 
Albers v. NoDak Racing Club, Inc.
, 256 N.W.2d 355, 359 (N.D. 1977).  The district court may not weigh the evidence, determine credibility, or attempt to discern the truth of the matter when ruling on a motion for summary judgment.  
Heng
, at ¶ 34; 
Schaefer v. Souris River Telecomm. Coop.
, 2000 ND 187, ¶ 8, 618 N.W.2d 175; 
Opp v. Source One Mgmt., Inc.
, 1999 ND 52, ¶ 16, 591 N.W.2d 101.  Because findings of fact are inappropriate on a motion for summary judgment, the clearly erroneous standard set out in N.D.R.Civ.P. 52(a), which governs our review of a district court’s findings of fact in a bench trial, is inapplicable to our review of the court’s resolution of a motion for summary judgment.

[¶11] A motion for summary judgment is not an opportunity to conduct a mini-trial.  If there are disputed issues of material fact that require resolution by findings of fact, the party opposing summary judgment is entitled to present its evidence to a finder of fact in a full trial.  
See
 
Albers
, 256 N.W.2d at 359 (“[i]t was not the purpose of [summary judgment] to require a party to try his case on affidavits with no opportunity to cross-examine witnesses”) (quoting 
Dulansky v. Iowa-Illinois Gas & Elec. Co.
,191 F.2d 881, 883 (8th Cir. 1951)).  

[¶12] Although the existence of findings of fact ordinarily indicates that the district court deemed it necessary to resolve factual disputes and make findings of fact, 
see
 
Brown
, 372 N.W.2d at 883; 
Albers
, 256 N.W.2d at 359, in this case the district court expressly stated that there were no genuine issues of material fact.  Under the unusual circumstances presented in this case, we will proceed to review whether summary judgment was warranted based upon the record before the district court.  That issue is a question of law which we review de novo.  
Hasper
, 2006 ND 220, ¶ 5, 723 N.W.2d 409.  

IV

[¶13] The dispositive issue on appeal is whether the district court could have concluded, as a matter of law, that the Smetanas were not good faith purchasers for value.

[¶14] Reformation of a deed is governed by N.D.C.C. § 32-04-17:

When, through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention so far as it can be done without prejudice to rights acquired by third persons in good faith and for value.

Reformation under N.D.C.C. § 32-04-17 is an equitable remedy.  
E.g.
, 
Ritter, Laber and Assocs., Inc. v. Koch Oil, Inc.
, 2007 ND 163, ¶ 12, 740 N.W.2d 67; 
Anderson v. Selby
, 2005 ND 126, ¶ 8, 700 N.W.2d 696; 
Wehner v. Schroeder
, 354 N.W.2d 674, 677 (N.D. 1984).  A court may grant reformation of a written instrument to correct a mutual mistake “when justice and conscience so dictate.”  
Ritter, Laber and Assocs.
, at ¶ 13 (quoting 
Ell v. Ell
, 295 N.W.2d 143, 150 (N.D. 1980)); 
Wehner
, at 678.  Each case seeking reformation of a written agreement must be determined on its own facts and circumstances.  
Anderson
, at ¶ 9.  

[¶15] The Smetanas argue they purchased the property “in good faith and for value” and that the original 1992 deed therefore cannot be reformed because it cannot be done without affecting their rights.  “Good faith” is defined in N.D.C.C. § 1-01-21:

Good faith shall consist in an honest intention to abstain from taking any unconscientious advantage of another even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious.

The determination whether a party acted in good faith under N.D.C.C. § 1-01-21 is a question of fact.  
Ballensky v. Flattum-Riemers
, 2006 ND 127, ¶ 27, 716 N.W.2d 110.

[¶16] In 
Diocese of Bismarck Trust v. Ramada, Inc.
, 553 N.W.2d 760, 768 (N.D. 1996) (citations omitted), this Court addressed the concepts of good faith and notice in the context of reformation of a deed under N.D.C.C. § 32-04-17:

Under N.D.C.C. § 32-04-17, a good faith purchaser must acquire rights without actual or constructive notice of another’s rights.  Actual notice consists of express information of a fact, N.D.C.C. § 1-01-23, while constructive notice is notice imputed by law to a person having no actual notice. N.D.C.C. § 1-01-24.

Under N.D.C.C. § 1-01-25, a person who has actual notice of circumstances sufficient to put a prudent person upon inquiry as to a particular fact and who omits to make an inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself.  The issues of good faith and constructive notice are similar in that they both require an examination of the information possessed by a person.  The information, however, need not be so detailed as to communicate a complete description of an opposing interest; instead, the information must be sufficient to assert the existence of an interest as a fact, which in turn gives rise to a duty to investigate.  In making inquiry, a person must exercise reasonable diligence; a superficial inquiry is not enough.

A party’s status as a good faith purchaser without notice of a competing interest is a mixed question of fact and law.  The factual circumstances relating to events surrounding the transaction–the realities disclosed by the evidence as distinguished from their legal effect–constitute the findings of fact necessary to determine whether a party has attained the status of a good faith purchaser without notice.  A court’s ultimate determination that a party is not a good faith purchaser for value is a conclusion of law, because that determination describes the legal effect of the underlying factual circumstances.

[¶17] The district court in this case made a “finding” that the Smetanas “had at least constructive notice of Cenex’s interest in the property because of the existence and placement of the fence and because of Cenex’s use of the property.”  As previously noted, although the district court made “findings of fact,” for purposes of reviewing the summary judgment we will presume the district court meant that, as a matter of law, the Smetanas had constructive notice which precluded their status as good faith purchasers for value.  The district court and Cenex, however, have misconstrued the type of notice that was required to be shown.  The crucial question in this case is not whether the Smetanas had notice of the existence of the fence and Cenex’s use of the property up to the fence.  The crucial question is whether that knowledge placed the Smetanas on constructive notice of the mistake in the 1992 Bauer/Cenex deed which resulted in the discrepancy in placement of the legal boundaries between the two parcels.

[¶18] Under our statutory definition of “good faith,” a party acts without good faith if he has “information or belief of facts which would render the transaction unconscientious.”  N.D.C.C. § 1-01-21.  In the context of reformation, such information must provide constructive notice of the specific defect to be cured by reformation:

When a bona fide purchaser acquires an interest in land and makes an investment in the land, that party is entitled to have his or her expectations protected. This is in accord with the principles behind the recording acts.  A person should not be deprived of his or her investment when he or she had no means of discovering the defect.  As a result, reformation is available only against the parties to the transaction and against those who have 
notice of the defect which is sought to be cured by reformation
.

14 Richard R. Powell, 
Powell on Real Property
 § 81A.07[3][d] (Michael Allan Wolf ed., 2009) (emphasis added; citation and footnotes omitted).  Professor Lord states the rule in a similar fashion:

To avoid reformation of an instrument, one must be both a subsequent purchaser for value and have no notice (before purchase) of the problematic situation.  Notice can be acquired directly or indirectly by any means sufficient to place a reasonable purchaser on alert of a situation out of the ordinary.

27 Richard A. Lord, 
Williston on Contracts
 § 70:46 (4th ed. 2003) (footnote omitted).

[¶19] The “problematic situation” in this case was the discrepancy between the description in the 1992 Bauer/Cenex deed and the location of the fence on the property.  The location of the fence and Cenex’s use of the property up to the fence did not conclusively place the Smetanas on notice that this was a “situation out of the ordinary.”  Under N.D.C.C. § 1-01-21, the Smetanas would gain an “unconscientious” advantage and lose their status as good faith purchasers only if they had notice that there was some problem or discrepancy with the boundary.  

[¶20] A review of the record title would have shown that, on their face, the various deeds were consistent.  Bauer owned the northernmost 196 feet of Lots 13 and 14 in 1992.  He deeded the southernmost 116 feet of his property to Cenex, and the northernmost 80 feet to Scheel and Narad, who subsequently deeded the 80 feet to the Smetanas.  Purchasers of real property “have a right to rely on recorded public records,” and mutual mistakes in earlier deeds “cannot be corrected to the prejudice of third parties who have relied on the public records.”  27 Lord, 
supra
, at § 70:47; 
see also
 14 Powell, 
supra
, at § 81A.07[3][d].  Because of the equitable nature of the remedy, “reformation is unavailable where its application would inflict an injury upon innocent parties as a result of an act of which they had no knowledge and for which they were not responsible, especially when reformation is sought by one who has committed some careless or negligent act.”  27 Lord, 
supra
, at § 70:45.  The “act” which has caused injury to the Smetanas is the error in the 1992 deed, and unless they had constructive or actual notice of that “act” the Smetanas acted in good faith when they purchased the property.   

[¶21] In 
Levien v. Fiala
, 902 P.2d 170 (Wash. Ct. App. 1995), the court addressed the nature of notice required to preclude a purchaser’s good faith status under facts similar to this case.  In 
Levien
, the Fialas had purchased property designated as Lot 23 and placed a chain link fence along the property. The fence encroached upon neighboring property, Lot 25, and cut off a 175 square foot triangular strip of land in Lot 25.  The Riddells, owners of Lot 25, executed a quit claim deed for the triangular piece of property to the Fialas.  This deed was not recorded.  The Riddells then sold Lot 25 to Levien. When Levien subsequently learned that the triangular strip was actually within Lot 25 and the fence encroached upon Lot 25, she sued to quiet title and for trespass.  The court of appeals noted that the trial court found the chain link fence was sufficient to put a reasonable person on notice that the owners of Lots 23 and 25 considered the fence the boundary between their properties, but agreed with the trial court’s conclusion that that was not the relevant issue:

As noted above, the trial court found that the chain link fence was sufficient to prompt a reasonable person to conclude that the owners of Lots 23 and 25 considered the fence the boundary between their properties.

The trial court, however, separated this finding from the question whether the fence’s presence was sufficient to put a person of average prudence on inquiry notice as to a possible discrepancy between it and the boundary shown on the plat. Here, the evidence was sufficient for the trial court to find that Levien lacked the information that would put a reasonable person on inquiry notice and, thus, for it to conclude that Levien was a good faith purchaser for value entitled to the protection of Washington’s recording statute.

Id.
 at 173.  The court therefore concluded:

Thus, the trial court did not err in finding that the chain link fence was not sufficient to put Levien on notice that she was receiving less than the 70- by 110-foot lot described in the statutory warranty deed.  The missing shallow triangle apparently was not detectable to the untrained eye, and Levien had no other way of knowing of the existence of the quit claim deed, since it had not been recorded and since she was not informed of its existence by the Riddells.

Id.
 at 174.  

[¶22] The same issue is presented in this case.  Although the presence of the fence may have been notice that the parties believed the fence was the boundary between  their properties, the critical, separate question is whether the presence of the fence was sufficient to put the Smetanas on notice of the discrepancy between the location of the fence and the boundary established in the recorded deeds.  Reformation is available against the Smetanas only if they had constructive notice of the discrepancy in the 1992 deed.  The district court erred when it concluded that, as a matter of law, the Smetanas had constructive notice of facts which precluded them from being good faith purchasers for value.

[¶23] Cenex argues that it would be inequitable to allow the Smetanas to acquire the disputed 42-foot strip of property because they received the “benefit of their bargain” when the City deeded a portion of the abandoned street to them for a nominal price.  Cenex’s argument is disingenuous.  The City’s subsequent agreement to deed property underlying the house to the Smetanas does not “cure” their failure to receive the benefit of their bargain when they purportedly purchased 80 feet of Lots 13 and 14 from Scheel and Narad.  Under the district court’s judgment quieting title, the Smetanas would only receive the northernmost 38 feet of Lots 13 and 14 through their deed.  That result does not provide them with the benefit of their bargain with Scheel and Narad.

[¶24] Cenex further argues the Smetanas would receive an inequitable windfall if they are allowed to acquire the disputed 42-foot strip, because they did not believe they were purchasing any property south of the fence.  The district court relied upon this argument in concluding: “The Court also finds Cenex’ equity argument compelling in that a decision in the Smetana’s favor would give them property they never intended to buy, and would deprive Cenex of property Cenex thought it had owned and had used since 1992.”  Ironically, Cenex and the district court apparently fail to realize that the judgment quieting title in Cenex creates a windfall to Cenex and deprives the Smetanas of property they believed they had purchased.  If the judgment is allowed to stand, Cenex will receive 158 feet of Lots 13 and 14 through their 1992 deed, rather than the 116 feet for which they contracted and paid.  Conversely, the Smetanas would receive only 38 feet of Lots 13 and 14, less than one-half of the 80 feet they paid for, through their deed from Scheel and Narad.  Because of the mistake in the 1992 deed, someone will ultimately be deprived of the full amount of property they believed they were purchasing.  If the Smetanas purchased in good faith and for value, the equitable remedy of reformation is not available if it will prejudice their rights.  N.D.C.C. § 32-04-17.  

[¶25] We conclude the district court erred in determining that, as a matter of law, the Smetanas were not good faith purchasers for value.

V

[¶26] There are additional problems with the judgment entered in this case which we feel compelled to address to prevent a similar recurrence on remand.  The judgment purports to quiet title in the disputed property in Cenex, using the following language:

That plaintiff, Farmers Union Oil Company of Garrison, d/b/a Cenex, is the sole owner in fee simple of the premises described in the complaint which consists of real property starting at the southern edge of the fence on the Smetana property described in the complaint and extending southward One hundred Sixteen (116) feet in Lots Thirteen (13) and Fourteen (14) in Block One (1) of the McLean County Addition to the city of Garrison, state of North Dakota, all in McLean County. 

[¶27] There are significant problems created by the language of the judgment.  The purpose of a quiet title judgment is to provide clarity and finality to legal ownership of a disputed parcel of property.  
See
 74 C.J.S. 
Quieting Title
 § 1 (2002) (the purpose of a quiet title action is “to clear up all doubts or disputes concerning land”).  In order to create that clarity and finality, the judgment must precisely describe the property in which title is quieted.  Thus, N.D.C.C. § 32-17-04 requires that, in a quiet title action, “the property must be described in the complaint with such certainty as to enable an officer upon execution to identify it.”  In 
Ward v. Shipp
, 340 N.W.2d 14, 17 (N.D. 1983), this Court held that, in a quiet title action, evidence describing the property by referencing a fence line was insufficient to adequately describe the property.  If the judgment in this case were recorded, it provides little or no permanent guidance as to the exact property included within the judgment.  A judgment quieting title to land extending 116 feet southward from “the southern edge of the fence on the Smetana property” is only as final as the amount of time it takes to dismantle a fence.  It is easy to imagine that in ten, twenty, or thirty years the fence will be gone.  At that point, this quiet title judgment would be wholly ineffective.  A quiet title judgment should include precise description, rather than merely referencing an impermanent fence.

VI

[¶28] We have considered the remaining issues and arguments raised by the parties and find they are either unnecessary to our decision or are without merit.  We reverse the judgment and remand for further proceedings.  

[¶29] Carol Ronning Kapsner

Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom

VandeWalle, Chief Justice, concurring specially.

[¶30] 
I agree that this case should not have been decided on a motion for summary judgment because there are fact questions which should be decided after a trial.  The majority opinion emphasizes the deeds to the property in determining whether or not the Smetanas were purchasers in good faith.  I also agree that the deeds are a significant factor in that determination.  I write separately to note that it is also significant whether the Smetanas intended to purchase only the property to the fence line, notwithstanding the legal description of the lot, or whether they intended to purchase the entire lot regardless of the fence.  Their knowledge and true intent can be determined only after a trial.  

[¶31] Gerald W. VandeWalle, C.J.