# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2022 ND 182

| | |
|---|---|
| Northern Oil & Gas, Inc., | Plaintiff, Appellee, and Cross-Appellant |
| v. | |
| EOG Resources, Inc., | Defendant, Appellant, and Cross-Appellee |
| and | |
| Kelly Hanson, Denise Hanson, Ritter Family Trust dated March 1, 2006, Lake Energy Development LLC, Sanish Oil LLC, Steven Pederson, Kimco Land Services, Inc., | Defendants |

### No. 20220133

Appeal from the District Court of Mountrail County, North Central Judicial District, the Honorable Douglas L. Mattson, Judge.

REVERSED.

Opinion of the Court by McEvers, Justice.

Nick A. Swartzendruber, Denver, CO, for plaintiff, appellee and cross-appellant.

Charles M. Carvell (argued) and Larry L. Boschee (on brief), Bismarck, ND, for defendant, appellant and cross-appellee.

**McEvers, Justice.**

[¶1]   EOG Resources, Inc. appeals from a judgment entered after the district court quieted title to a mineral leasehold in favor of Northern Oil & Gas, Inc. The court also awarded Northern damages and attorney fees.  EOG challenges the title determination and the award of attorney fees.  Northern cross appeals arguing the court erred when it declined to grant additional relief after its title determination.  We hold the court erred when it quieted title in Northern.  We reverse the judgment and vacate the award of attorney fees.

I

[¶2]   The dispute concerns two competing oil and gas leases.  For ease of reference, we refer to the leases EOG and Northern claim ownership under as the EOG Lease and the Northern Lease, respectively.  The interest in question (the Disputed Interest) is a mineral leasehold located in Mountrail County.

[¶3]   In 2006, Ritter, Laber and Associates, Inc. was part of a joint venture that was locating mineral owners and leasing their interests.  A Ritter representative contacted Eugene and Carol Hanson.  Their meeting resulted in the Hansons mailing documents to one of Ritter's partners in the venture. One document was a fully executed oil and gas lease dated December 20, 2006. This is the EOG Lease.  Another document was a "Side Letter Agreement" signed by the Hansons on the same date as the EOG Lease. It contained terms allowing Ritter to "exercise its option" to lease the minerals.  If Ritter chose not to exercise the option, Ritter was required to "immediately release [the Hansons] from any further obligation."  It is undisputed that Eugene and Carol Hanson owned mineral interests in the tracts identified by the EOG lease.  The EOG Lease was not immediately recorded.

[¶4]   In April 2007, Eugene and Carol Hanson executed a warranty deed to their son and daughter-in-law, Kelly and Denise Hanson, which included the minerals in question and was recorded.  The deed reserved a 50% life estate in the minerals.  In May 2007, Ritter recorded a "Memorandum of Oil and Gas

Lease Option" that referenced the EOG Lease. In July 2007, Ritter recorded the EOG Lease and sent Eugene and Carol Hanson a letter stating it "has elected to exercise its option to lease." In August 2007, Ritter's partner sent the couple a letter with a check for roughly $37,000 "as total consideration for your Paid up Oil and Gas Lease dated December 20, 2006." In September 2007, Ritter assigned the EOG Lease, along with a batch of other leases, to EOG. The assignment was recorded. In December 2007, Ritter obtained an oil and gas lease from Kelly and Denise Hanson listing the tracts in question. This is the Northern Lease. It was recorded in January 2008 and assigned to Northern in June 2008.

[¶5]   Northern brought this lawsuit in 2016 requesting a declaration it owns the Disputed Interests, an accounting of production, and damages. At the parties' request, the district court agreed to bifurcate the proceedings and decide the title issue before considering the remaining claims. The parties filed cross motions for summary judgment on the title issue. The court quieted title in Northern. The court determined the transaction between Eugene and Carol Hanson and Ritter created an option to lease, Denise and Kelly Hanson had no notice of the option, and they took title to the minerals free of it. The court entered a partial judgment determining "the EOG Lease is not valid and subsisting insofar as it conflicts with the Northern Lease." The court held a bench trial as to the remaining claims and awarded Northern damages and attorney fees.

## II

[¶6]   EOG challenges the district court's title determination, which was made on summary judgment.

> Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was

2

appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*Hallin v. Inland Oil & Gas Corp.*, 2017 ND 254, ¶ 6, 903 N.W.2d 61 (quoting *THR Minerals, LLC v. Robinson*, 2017 ND 78, ¶ 6, 892 N.W.2d 193).

[¶7]   An oil and gas lease constitutes a real property interest in North Dakota. *Kittleson v. Grynberg Petroleum Co.*, 2016 ND 44, ¶ 34, 876 N.W.2d 443; *see also Nantt v. Puckett Energy Co.*, 382 N.W.2d 655, 659 (N.D. 1986). A lease of real property is both a contract and a conveyance of an interest in land. *Kittleson*, at ¶ 34; *see also Diocese of Bismarck Trust v. Ramada, Inc.*, 553 N.W.2d 760, 766 (N.D. 1996).

A

[¶8]   EOG argues the transaction between Eugene and Carol Hanson and Ritter created an immediately effective lease. EOG asserts that under North Dakota law the delivery of a grant—in this case the fully executed EOG Lease—cannot be conditional. EOG contends that "[e]ven if the parties had intended to condition effectiveness of the lease upon exercise of the option, the lease still would have taken effect upon delivery." EOG thus claims the Disputed Leasehold transferred to Ritter when the EOG Lease was mailed—i.e., before Eugene and Carol Hanson divested themselves of the mineral interests. Northern, on the other hand, argues the transaction created an option to lease rather than an immediately effective lease. Northern claims the option was not exercised prior to the minerals transferring to Kelly and Denise Hanson. Northern therefore claims its lease, from Kelly and Denise Hanson, prevails.

[¶9]   A transfer in writing is called a grant.  N.D.C.C. § 47-09-05.  Under N.D.C.C. § 47-09-06, a grant "takes effect so as to vest the interest intended to be transferred only upon its delivery."  *See also Rice v. Neether*, 2016 ND 247, ¶ 8, 888 N.W.2d 749 (absent delivery a grant is not effective).  Whether a delivery of a grant has occurred depends on the grantor's intent.  *Id.* at ¶ 14; *see also Shuck v. Shuck*, 44 N.W.2d 767, 772 (N.D. 1950); *Arhart v. Thompson*, 31 N.W.2d 56, 59 (N.D. 1948).  For a delivery to occur, the grantor must intend to pass title.  *See Keefe v. Fitzgerald*, 288 N.W. 213, 214-15 (N.D. 1939) (distinguishing between intent to manually transfer a grant and intent to pass title); *see also Arhart*, at 574 (no delivery occurred when grantor manually gave deed to grantee because "her actions . . . show clearly she did not intend to transfer title"); *Shuck*, at 635 (words or conduct that show a grantor intended to "vest the estate in the grantee, and to surrender control over the title, is necessary").  Whether a delivery has occurred is a question of fact that must be "found from all the circumstances surrounding the transaction."  *Rice*, at ¶ 13; *see also Jorgensen v. Crow*, 466 N.W.2d 120, 122-23 (N.D. 1991); 4 Tiffany Real Prop. § 1034 (3d ed. 2022 Supp.) *(*the terms of a grant do not show whether there has been a delivery; "[b]y its very nature, evidence of delivery or lack thereof can only come by way of parol evidence").

[¶10] Delivery of a grant with intent that title transfer upon some contingency or condition is prohibited under North Dakota law.  "A grant cannot be delivered to the grantee conditionally."  N.D.C.C. § 47-09-07.  A conditional delivery "is necessarily absolute and the instrument takes effect thereupon, discharged of any condition on which the delivery was made."  *Id.*; *see also Sargent v. Cooley*, 94 N.W. 576, 579 (N.D. 1902) (holding delivery of a mortgage was absolute and took effect despite conditions); *Ueland v. More Bros.*, 133 N.W. 543, 545 (N.D. 1911) ("The effect of the statute is to abrogate the condition precedent, and make the delivery absolute."); *Adams v. Little Missouri Minerals Ass'n.* 143 N.W.2d 659, 676 (N.D. 1966) (mineral interests transferred to grantee when deed was issued despite conditions in written agreements); *Gajewski v. Bratcher*, 221 N.W.2d 614, 626-27 (N.D. 1974) (parol evidence regarding conditional delivery inadmissible under N.D.C.C. § 47-09-07).  Section 47-09-07 codifies the common law rule prohibiting the effectiveness of a "duly executed deed" from being conditioned on some requirement "not

expressed in the deed itself" absent fraud or mistake. *Sargent*, at 578. While conditional delivery of a grant to a grantee is prohibited, a grant may be delivered in escrow to a third party subject to conditions. *See* N.D.C.C. § 47-09-08. The effectiveness of a real property grant itself, as opposed to its delivery, may also be conditional. *See* N.D.C.C. § 47-10-14.

[¶11] Eugene and Carol Hanson testified in depositions that they were unable to remember the details of their transaction with Ritter and that they could not say whether they sent Ritter a lease or an option to lease. The parties agree Eugene and Carol Hanson mailed the fully executed EOG Lease to Ritter's partner along with a letter titled "Side Letter Agreement." The Side Letter Agreement was written by Ritter's partner. The signatures of Eugene and Carol Hanson are at the bottom of the letter following the words "[t]he above terms are accepted." Under those terms, the EOG Lease would "not be put of record until the option is exercised." If Ritter elected to exercise the option, Ritter was required to pay "the agreed upon price per net mineral acre times the number of acres owned . . . as determined by title examination." There are no terms allowing the Hansons the right to rescind the option before its expiration date. After Ritter exercised the option, the Hansons accepted a check for roughly $37,000 that was sent with a letter from Ritter's partner stating the money was "total consideration for your Paid up Oil and Gas Lease dated December 20, 2006."

[¶12] The parties do not dispute these facts. The parties agree Eugene and Carol Hanson intended title to transfer to Ritter if Ritter elected to exercise its option. The parties disagree as to the legal effect of the transaction. Each party moved for summary judgment contending the undisputed facts require a title determination in its favor. EOG claims title vested in Ritter upon delivery of the lease. Northern claims it did not.

[¶13] The transaction between Eugene and Carol Hanson and Ritter closely resembles transactions that were deemed immediate deliveries in *Adams*, 143 N.W.2d 659. Landowners entered into agreements with a corporation to convey their mineral interests. *Id.* at 673. The agreements contained provisions stating the corporation would pay for the interests upon a title examination

5

and a determination that title was "acceptable." *Id.* at 671. The landowners issued fully-executed mineral deeds to the corporation. *Id.* at 665. The agreements prohibited the corporation from recording the deeds until after it had paid for the interests. *Id.* at 671. The corporation promised to return the mineral interests if it did not acquire a set amount of mineral acres by a certain date. *Id.* at 672. The question of when title transferred was the "principal issue." *Id.* at 673. The district court held that because acceptance is an essential element of delivery, title transferred when the corporation issued its stock to each landowner. *Id.* at 665. This Court reached a different conclusion on appeal. Interpreting N.D.C.C. § 47-09-07, which states delivery of a grant cannot be conditional, the Court held title to the minerals transferred "as of the date of the manual delivery by the grantor and manual acceptance by the grantee of the mineral deeds" notwithstanding the conditions in the agreements. *Id.* at 676.

[¶14] Because Eugene and Carol Hanson were unable to recall the details of their transaction with Ritter, the only evidence of what the Hansons intended to accomplish by mailing the documents to Ritter are the documents themselves. Their contents are undisputed. There is no allegation of fraud or mistake. Like in *Adams*, the agreement accompanying the EOG Lease promised title would transfer to Ritter on the condition that Ritter accepted the lease and paid for it after a title examination. As in *Adams*, the Hansons relinquished their authority over the EOG Lease with conditions precedent to the transfer of title that are expressed in a contemporaneous agreement. It has long been the law in this jurisdiction that a conditional delivery of a grant to a grantee becomes absolute.

> If the grantor makes a manual delivery to the grantee of a deed absolute in form, intending to part with all authority and dominion over the instrument, he makes an absolute delivery and title passes immediately in accordance with the terms of the deed notwithstanding any intention or understanding that its operation be delayed until the happening of a contingency.

*Keefe*, 288 N.W. at 216. There is no dispute the Hansons intended title to transfer upon satisfaction of conditions. Under N.D.C.C. § 47-09-07 and our

6

longstanding case law, any conditions the Hansons agreed to or created outside the four corners of the lease are void for purposes of delivery as a matter of law.

[¶15] We hold the district court erred as a matter of law when it determined the EOG Lease did not become effective upon delivery because the parties intended to create an option. Even if the Hansons intended to create an option, the grant (the EOG Lease) could not be delivered subject to conditions (an option). When a grant is delivered with intent that title should pass only if a condition is satisfied, "one of two things must follow, either there is no delivery at all and no title can pass by virtue of the deed at any time, or the delivery is absolute and passes title in accordance with the recitals in the deed." *Keefe*, 288 N.W. at 215. Under N.D.C.C. § 47-09-07, the second result is required. The conditional delivery "is necessarily absolute and the instrument takes effect thereupon, discharged of any condition on which the delivery was made." *Id.*

B

[¶16] Northern appears to claim the EOG Lease itself was conditional—i.e., there was a conditional grant as opposed to a conditional delivery. Northern argues the Side Letter Agreement is the "principal document" in the transaction between Ritter and Eugene and Carol Hanson. Northern asserts it is improper to read the EOG Lease as a "separate stand-alone document." We disagree.

[¶17] An oil and gas lease is a contract. *Tank v. Citation Oil & Gas Corp.*, 2014 ND 123, ¶ 10, 848 N.W.2d 691. The rules of contract interpretation apply to leases. *Hallin*, 2017 ND 254, ¶ 8. Leases are interpreted to determine the parties' intent. *Id.* at ¶ 9. Although contracts executed together concerning the same subject matter may be read and construed together, N.D.C.C. § 9-07-07, this rule "does not unite two or more contracts relating to a transaction into a single contract." *Nichols v. Goughnour*, 2012 ND 178, ¶ 13, 820 N.W.2d 740. Separate contracts retain their separate identity. *Id.* "When an agreement has been memorialized in a clear and unambiguous writing, extrinsic evidence should not be considered to ascertain intent." *Hallin*, at ¶ 9. Nor may extrinsic evidence, including other agreements or writings, be used to alter the terms of

7

an unambiguous oil and gas lease. *Id.* at ¶ 15. (refusing to consider payment drafts that accompanied executed leases to determine the number of acres leased when the operative language of the lease was clear and unambiguous); *see also Nichols*, at ¶ 14 ("each deed is clear and unambiguous, and extrinsic evidence therefore was not admissible to alter, vary, explain, or change the deed."). The interpretation of a lease presents a question of law when the parties' intent can be determined from the lease alone. *Hallin*, at ¶ 9.

[¶18] Northern argues the EOG Lease was not effective because a sight draft included with the Side Letter Agreement was subject to approval of title. Northern claims "that language creates a condition precedent to the effectiveness of the lease." Northern relies on two decisions from Texas: *Sun Exploration & Production Co. v. Benton*, 728 S.W.2d 35 (Tex. 1987) and *Puckett v. Hoover*, 202 S.W.2d 209 (Tex. 1947). Each case dealt with language in drafts that indicated payment for oil and gas interests would be subject to approval of title. In *Puckett*, grantors handed a mineral deed to the grantee in exchange for the draft. 202 S.W.2d at 210. In *Sun Exploration*, a mineral owner returned an executed lease to a land man in exchange for the draft. 728 S.W.2d at 36. *Puckett* held that no transfer occurred because the grantee "had no intention of accepting the estate described in the conveyance unless he approved the title." *Puckett*, at 211. *Sun Exploration* followed *Puckett* and held when "the grantee imposes certain conditions precedent to acceptance, title does not pass under the deed until fulfillment of such conditions." *Sun Exploration*, at 37.

[¶19] We decline to follow the Texas cases. This Court has considered the rule from Texas and rejected it based on N.D.C.C. § 47-09-07, which makes conditional deliveries absolute. *See Adams*, 143 N.W.2d at 675 (discussing *Puckett* and noting "a few other states have reached a different conclusion"). To the extent Northern claims the EOG Lease itself created a conditional grant, Northern has failed to identify anything in the lease to support its position. The operative language in the lease is unconditional. It states the Hansons "granted, demised, leased and let, and by these presents does grant, demise, lease and let exclusively unto the said Lessee, the land hereinafter described." The lease does not refer to the Side Letter Agreement or the sight draft. While consideration of the circumstances surrounding the transaction may be

8

permissible to determine whether a delivery occurred, *Rice*, 2016 ND 247, ¶ 13, neither those circumstances nor another agreement can be used to alter the unambiguous terms of the EOG Lease. *Hallin*, 2017 ND 254, ¶ 9. Because Northern has not identified anything in the EOG Lease to indicate its grant was conditional, we conclude the EOG Lease was effective on delivery.

C

[¶20] Having determined the EOG Lease was effective before Eugene and Carol Hanson transferred the minerals in question to Kelly and Denise Hanson, we must address the implications of the EOG Lease being recorded after the mineral transfer. Northern claims ownership under the lease it took from Kelly and Denise Hanson. Northern's claim to ownership thus requires a determination that the unrecorded EOG Lease was not valid as to them.

[¶21] Recording an instrument puts everyone on notice of its contents. N.D.C.C. § 47-19-19. *See also* N.D.C.C. § 47-16-40 (recording an oil and gas lease imparts notice on the lease on the public). An unrecorded instrument is valid as to the parties to the instrument and those with notice of the instrument. N.D.C.C. § 47-19-46. An unrecorded instrument that encumbers real estate is void against a subsequent good-faith purchaser for valuable consideration. N.D.C.C. § 47-19-41. A good faith purchaser is one who acquires rights without actual or constructive notice of another's rights. *Northern Oil & Gas, Inc. v. Creighton*, 2013 ND 73, ¶ 15, 830 N.W.2d 556.

> Actual notice consists of express information of a fact, N.D.C.C. § 1–01–23, while constructive notice is notice imputed by law to a person having no actual notice. N.D.C.C. § 1–01–24.
>
> Under N.D.C.C. § 1–01–25, a person who has actual notice of circumstances sufficient to put a prudent person upon inquiry as to a particular fact and who omits to make an inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself. The issues of good faith and constructive notice are similar in that they both require an examination of the information possessed by a person. The information, however, need not be so detailed as to communicate a complete description of an opposing interest; instead, the information must be sufficient to assert the existence of an interest as a fact, which in turn gives rise to a duty

9

to investigate. In making inquiry, a person must exercise reasonable diligence; a superficial inquiry is not enough.

A party's status as a good faith purchaser without notice of a competing interest is a mixed question of fact and law. The factual circumstances relating to events surrounding the transaction—the realities disclosed by the evidence as distinguished from their legal effect—constitute the findings of fact necessary to determine whether a party has attained the status of a good faith purchaser without notice. A court's ultimate determination that a party is not a good faith purchaser for value is a conclusion of law, because that determination describes the legal effect of the underlying factual circumstances.

*Farmers Union Oil Co. of Garrison v. Smetana*, 2009 ND 74, ¶ 16, 764 N.W.2d 665 (quoting *Ramada*, 553 N.W.2d at 768).

[¶22] Denise Hanson was asked whether she knew about the EOG Lease during a deposition. She testified she had a good relationship with Eugene and Carol Hanson "and I'm guessing they told us what was happening. When that was, I don't recall." EOG's counsel asked Kelly Hanson whether he knew about the EOG Lease prior to the transfer from his parents. He responded that he knew the interests had been leased. Northern's counsel asked him to clarify his answer:

> Q.    Okay. We – there was some conversation with [EOG's counsel] about the lease that your parents had granted—and I—there's an issue whether it was a lease or a lease option—in —in December of 2006.
> Can you say definitively that prior to the transaction with your parents involving the purchase and exchange that you were aware of that lease?
>
> A.    Yes.
>
> Q.    Okay. You had talked about it before that – that time?
>
> A.    I knew that they're – they had leased their minerals or whatever, yes.
>
> Q.    Okay. Just based on informal conversations with them?

A.   Correct.

Q.   Do you recall – obviously, those conversation were before the March-April time frame in 2007, then?

A.   Correct.

Q.   Okay.  Do you recall what was said about the lease?

A.   I just knew that he had leased.

Q.   That's the –

A.   And I knew no – nothing else.

Q.   Okay.

A.   I know the one thing we did talk about, and I think it's on one of those (indicating), was the distance from the buildings or something.  He wanted that changed.

Q.   Okay.

A.   I can't remember.  It was so many feet, and then we said, "No, that's too close."

Q.   Setbacks?

A.   Exactly.

Consistent with Kelly Hanson's deposition testimony, the EOG Lease contains a handwritten notation revising the drilling setback distance from 200 feet to 600 feet.

[¶23]  Based on his deposition, Northern claims Kelly Hanson "recalls speaking with Eugene about being approached to lease but also testified that he did not know the decision that Eugene and Carol ultimately made."  Northern's assertion is inconsistent with Kelly Hanson's deposition.  He repeatedly stated he knew the interests had been leased.  And even if he did not know whether

11

his parents ultimately decided to sign the EOG Lease, the facts are sufficient to give rise to a determination that he was put on inquiry notice. It is undisputed that he spoke with his father about the negotiations and the lease. Northern has not proffered any evidence that we can view in its favor to conclude there is a genuine dispute of fact as to Kelly and Denise Hanson's knowledge of the EOG Lease. Because Kelly and Denise Hanson had knowledge of facts giving them at least constructive notice of the EOG Lease, their mineral interests were encumbered by the EOG Lease when they executed the Northern Lease. The EOG Lease was recorded before the Northern Lease. The EOG Lease takes priority.

### III

[¶24] We hold the district court erred when it quieted title in Northern, and we therefore vacate its award of attorney fees. Our holding forecloses Northern's cross appeal, which is based on a premise that the court's title determination was correct. Resolution of the remaining issues and arguments is unnecessary to our decision. The judgment is reversed.

[¶25] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte

[¶26] The Honorable Gerald W. VandeWalle recused himself after oral argument and did not participate in this decision.