2015 ND 303

**Kathleen MARKGRAF and Marilyn Shanahan, Plaintiffs and Appellees**

**v.**

**Connie WELKER, Vicki Ostrem, Margaret Rehmer, Robert Leroy Hannah, Jr., Robert Hannah, Cheryl Hannah, Donna Shilliam, William J. Hannah, Estate of William J. Hannah, Mary Hannah, Estate of Mary Hannah, Wilbert Hannah, Estate of Wilbert Hannah, Robert L. Hannah, Estate of Robert L. Hannah, Alan Hannah, Estate of Alan Hannah, Kathryn Hannah Nelson, Estate of Kathryn Hannah Nelson, Barbara Eggert, Estate of Barbara Eggert, Arnold Hannah, Estate of Arnold Hannah, Donald Hannah, Estate of Donald Hannah, Larry Erickson, Estate of Larry Erickson, and all other persons unknown claiming any estate interest in or lien or encumbrance upon, the real property described in the Complaint, whether as heirs, legatees, personal representatives, devisees, creditors, or otherwise, Defendants.**

**Connie Welker and Vicki Ostrem, Appellants.**

**No. 20150116.**

Supreme Court of North Dakota.

Dec. 31, 2015.

Andrew D. Cook (argued) and Lukas D. Andrud (on brief), Fargo, N.D., for plaintiffs and appellees.

Robert J. Pathroff (argued), Bismarck, N.D. and David T. Hermanson (appeared), Fargo, N.D., for appellants.

VANDE WALLE, Chief Justice.

[¶ 1] Connie Welker and Vicki Ostrem appealed from a summary judgment quieting title to certain Mountrail County mineral interests. Welker and Ostrem argue the district court erred in granting Kathleen Markgraf and Marilyn Shanahan's motion for summary judgment because Markgraf and Shanahan's claims are barred by the statute of limitations, the court relied on inadmissible evidence, and Markgraf and Shanahan did not prove the existence of an implied trust by clear and convincing evidence. We reverse and remand, concluding summary judgment was not appropriate.

I

[¶ 2] Markgraf and Shanahan brought an action against Welker and Ostrem to quiet title to minerals in and under property located in Mountrail County, described as:

*Township 154 North, Range 93 West*
Section 17: N1/2NW1/4, SW1/4NW1/4, NW1/4SW1/4
*Township 156 North, Range 93 West*
Section 25: SW1/4
*Township 156 North, Range 92 West*
Section 19: E1/2NW1/4, Lots 1 & 2

Lots 1, 2, 3, and 4, of Block 8, Original Townsite of Ross

Markgraf and Shanahan alleged W.J. Hannah owned 100% of the surface and minerals when he conveyed the property to "Arnold Hannah, Trustee" by grant deed in 1965, intending to create a family trust and appointing his son, Arnold Hannah, as trustee. Markgraf and Shanahan are descendants of Kathryn Nelson, W.J. Hannah's daughter and Arnold Hannah's sister. They claimed W.J. Hannah intended Arnold Hannah would hold the legal title to the property in trust for the benefit of himself; his siblings, Kathryn Nelson and Robert L. Hannah; and Margaret Rehmer, the only child of his deceased brother, Wilbert Hannah. They claimed Arnold Hannah held himself out as trustee in dealings related to the property, kept an accounting of the income and expenses related to the property, and made disbursements to the beneficiaries from the proceeds of the trust. They argued a resulting or constructive trust was created and Welker and Ostrem, as Arnold Hannah's heirs, do not have exclusive rights to the property. Welker and Ostrem answered and requested the complaint be dismissed.

[¶ 3] Welker and Ostrem moved for summary judgment, filing an affidavit and exhibits in support of the motion. They argued they were entitled to summary judgment because the 1965 grant deed transferring the property to "Arnold Hannah, Trustee" conveys the title to Arnold Hannah in his individual capacity, the word "Trustee" is surplusage under N.D.C.C. § 47–09–12, and Markgraf and Shanahan's claims for a resulting or constructive trust fail.

[¶ 4] Markgraf and Shanahan also moved for summary judgment, arguing a resulting or constructive trust was created

when the property was conveyed to Arnold Hannah. They claimed that W.J. Hannah intended Arnold Hannah act as a trustee and manage the property for the benefit of the family and that Arnold Hannah acted as a trustee by managing the property, accounting for income and expenses, paying out disbursements from the proceeds of the property to family members, and paying himself a fee for his work related to the property. They filed supporting affidavits from Markgraf and their attorney, Andrew Cook, with attached exhibits.

[¶ 5] Welker and Ostrem opposed Markgraf and Shanahan's motion for summary judgment. They argued Markgraf and Shanahan's quiet title claims were barred by the twenty-year statute of limitations contained in N.D.C.C. § 28–01–04, an implied trust was not created, and there is not clear and convincing evidence of an understanding in 1965 that the mineral rights would be divided equally among W.J. Hannah's children.

[¶ 6] Welker and Ostrem moved to strike hearsay contained in Markgraf's affidavit under N.D.R.Civ.P. 56(e)(1). They claimed Markgraf's affidavit contained statements that were not based on personal knowledge and were inadmissible hearsay. They also moved to exclude the exhibits attached to Andrew Cook's affidavit, arguing the exhibits contained hearsay and lacked foundation.

[¶ 7] Markgraf filed a supplemental affidavit with attached exhibits. The exhibits were previously filed as attachments to Cook's affidavit. Cook also filed a supplemental affidavit.

[¶ 8] After a hearing, the district court granted Markgraf and Shanahan's motion for summary judgment and denied Welker and Ostrem's motion. The court denied Welker and Ostrem's motions to strike Markgraf's affidavit and to exclude the exhibits attached to Cook's affidavit. The court concluded the statute of limitations did not apply, Markgraf and Shanahan did not claim there was an express trust, and there was clear and convincing evidence that a resulting trust was created when the property was conveyed to Arnold Hannah.

## II

[¶ 9] Welker and Ostrem argue the district court erred in granting Markgraf and Shanahan's motion for summary judgment.

[¶ 10] The standard for reviewing summary judgments is well established:

Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*Hamilton v. Woll*, 2012 ND 238, ¶ 9, 823 N.W.2d 754 (quoting *Wenco v. EOG Res.*,

*Inc.*, 2012 ND 219, ¶ 8, 822 N.W.2d 701). "Summary judgment is inappropriate if neither party is entitled to judgment as a matter of law or if reasonable differences of opinion exist as to the inferences to be drawn from the undisputed facts." *Northern Oil & Gas, Inc. v. Creighton,* 2013 ND 73, ¶ 11, 830 N.W.2d 556 (quoting *Riedlinger v. Steam Bros., Inc.,* 2013 ND 14, ¶ 10, 826 N.W.2d 340).

A

[¶ 11] Welker and Ostrem argue the district court relied on inadmissible evidence to grant summary judgment and erred in denying their evidentiary motions. They claim a majority of the documents Markgraf and Shanahan offered in support of their implied trust claims were inadmissible because they are hearsay and lack foundation.

[¶ 12] Affidavits filed in support of or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." N.D.R.Civ.P. 56(e)(1). An affidavit may be supplemented by depositions, interrogatories, or additional affidavits. *Id.* Statements in an affidavit must set out facts that would be admissible in evidence. *McColl Farms, LLC v. Pflaum,* 2013 ND 169, ¶ 30, 837 N.W.2d 359.

[¶ 13] "Hearsay statements are generally not admissible and will not be considered in deciding a motion for summary judgment unless the statements fall within an exception to the hearsay rule." *McColl Farms,* 2013 ND 169, ¶ 30, 837 N.W.2d 359. Hearsay is a statement the declarant makes outside of the current trial or hearing and is offered to prove the truth of the matter asserted. N.D.R.Ev. 801(c).

[¶ 14] Welker and Ostrem argue Markgraf and Shanahan submitted and the district court improperly relied on numerous exhibits, including letters from Arnold Hannah to family members containing information about the property, a 1981 handwritten statement about the property signed by Kathryn Nelson, a 1981 handwritten statement about the property and disbursements from the property's proceeds signed by Arnold Hannah, and a 2002 letter from Kathryn Nelson to the Mountrail County Register of Deeds. Markgraf and Shanahan argue the court did not err in admitting the documentary evidence because the statements included in the exhibits were not offered to prove the truth of the matter asserted and were not hearsay.

[¶ 15] This Court has held that statements offered to prove the existence of an oral contract or assent to a contract are "verbal acts" or "verbal conduct" and are not hearsay. *Moen v. Thomas,* 2001 ND 95, ¶ 12, 627 N.W.2d 146. A statement offered to prove the statement was made is not hearsay because it is not offered to prove the truth of the matter asserted. *Id.* at ¶ 11. A resulting trust is based on the parties' implied intentions, and a resulting trust exists when the parties' acts or expressions indicate an intent that a trust relation resulted from their transaction. *Spagnolia v. Monasky,* 2003 ND 65, ¶ 15, 660 N.W.2d 223. Resulting trusts are similar to oral contracts in that it is the outward manifestations of the parties' intent that govern, and not the parties' secret intentions. *See Moen,* at ¶ 12. Relevant evidence of the parties' acts or expressions indicating an intent is not hearsay because the presence or absence of intent is an issue in the case and the truth and accuracy of the statements made in the exhibits is not at issue. *Cf. id.* at ¶ 13 (stating the

hearsay rule does not exclude relevant testimony about what contracting parties said about the terms of an oral contract because the presence or absence of the words are part of the issues in the case and we are not concerned with the truth and accuracy of the statements). The statements contained in the exhibits were not offered to prove the truth of the matter asserted; rather, they were offered as evidence of an intent to create a trust. The exhibits were not hearsay.

[¶ 16] Welker and Ostrem also claim the exhibits are inadmissible because they lack foundation. Foundation testimony is testimony that identifies the evidence and connects it with the issue in question. *Erdmann v. Thomas*, 446 N.W.2d 245, 246 (N.D.1989). Foundation testimony establishes the competency, materiality, and relevance of the evidence. *Id.* The district court has discretion in deciding whether to exclude evidence on the basis that it lacked foundation, and the court's decision will not be reversed on appeal unless the court abused its discretion. *Id.* A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Cmty. Homes of Bismarck, Inc. v. Main*, 2011 ND 27, ¶ 11, 794 N.W.2d 204.

[¶ 17] Most of the exhibits at issue were originally filed as attachments to Cook's affidavit. An attorney's affidavit must be made on personal knowledge. *McColl Farms*, 2013 ND 169, ¶ 31, 837 N.W.2d 359; *see also* N.D.R.Civ.P. 56(e). "An attorney's affidavit is not a substitute for the party's personal knowledge and is admissible only to prove facts that are within the attorney's personal knowledge and to which he is competent to testify." *McColl Farms*, at ¶ 31.

[¶ 18] Cook's affidavit did not include any foundational information. Affidavits, however, may be supplemented by additional affidavits or answers to interrogatories. N.D.R.Civ.P. 56(e)(1). Markgraf filed a supplemental affidavit stating she is the daughter of Kathryn Nelson and the niece of Arnold Hannah. She explained that she served as her mother's attorney-in-fact and signed documents related to the minerals, she is familiar with the family's interest in the minerals and the history of the alleged trust, her mother kept a file of papers related to the minerals, and she looked at the documents in the file and discussed them with her mother on several occasions. She stated many of the exhibits attached to Cook's affidavit were in her mother's possession and were included in her mother's file. Cook also filed a supplemental affidavit explaining he received some of the exhibits he attached to his first affidavit from Welker and Ostrem in response to interrogatories and he attached a copy of Welker and Ostrem's answers to the interrogatories. He explained that he requested Welker and Ostrem identify and provide copies of any and all documents in their possession relating to the mineral interests, including personal documents such as letters, ledgers, or any other handwritten documents created by Arnold Hannah, and he received the documents in response. The district court did not abuse its discretion by denying the motion to exclude the exhibits for lack of foundation.

[¶ 19] We conclude the district court did not err in denying Welker and Ostrem's motions to exclude Markgraf's and Cook's affidavits and the attached exhibits.

B

[¶ 20] Welker and Ostrem argue the district court erred in finding a resulting trust was created and granting sum-

mary judgment in favor of Markgraf and Shanahan. They claim the 1965 grant deed unambiguously conveys the property to Arnold Hannah, Markgraf and Shanahan did not prove the existence of an implied trust by clear and convincing evidence, and the documentary evidence was inconsistent and was not specific about W.J. Hannah's intent and the family's understanding about distribution of the mineral rights.

[¶ 21] An implied trust must be established by clear and convincing evidence. *McGhee v. Mergenthal*, 2007 ND 120, ¶ 10, 735 N.W.2d 867. The evidence does not need to be undisputed to rise to the level of clear and convincing, but "the evidence must be such that the trier of fact is reasonably satisfied with the facts the evidence tends to prove as to be led to a firm belief or conviction." *Zundel v. Zundel*, 278 N.W.2d 123, 130 (N.D.1979). The existence of an implied trust is a question of fact. *Schroeder v. Buchholz*, 2001 ND 36, ¶ 7, 622 N.W.2d 202.

[¶ 22] There are two types of implied trusts, resulting trusts and constructive trusts. *Spagnolia*, 2003 ND 65, ¶ 15, 660 N.W.2d 223. A resulting trust is based on the parties' intentions and "exists where the acts or expressions of the parties indicate an intent that a trust relation resulted from their transaction." *Id.* (quoting *Loberg v. Alford*, 372 N.W.2d 912, 915 (N.D.1985)). "Imposition of a resulting trust gives a vague or incomplete agreement the substance that was originally intended by the parties." *McGhee*, 2007 ND 120, ¶ 12, 735 N.W.2d 867. The parties' intention to create a trust must be present at the time the property is conveyed. *Id.*

[¶ 23] "A constructive trust is an equitable remedy to compel a person who unfairly holds a property interest to convey it to the rightful owner." *Spagnolia*, 2003 ND 65, ¶ 15, 660 N.W.2d 223. Two essential elements must be established to prove the existence of a constructive trust: unjust enrichment and a confidential relationship. *Id.* at ¶ 16. "A confidential relationship 'may exist although there is no fiduciary relation; it is particularly likely to exist where there is a family relationship.'" *Schroeder*, 2001 ND 36, ¶ 8, 622 N.W.2d 202 (quoting *Paulson v. Meinke*, 389 N.W.2d 798, 801 (N.D. 1986)). Five elements must be established to prove unjust enrichment: 1) an enrichment, 2) an impoverishment, 3) a connection between the enrichment and impoverishment, 4) absence of a justification for the enrichment and impoverishment, and 5) an absence of a remedy provided by law. *Schroeder*, at ¶ 15.

[¶ 24] Markgraf and Shanahan claim a resulting trust, or alternatively a constructive trust, was created when W.J. Hannah conveyed the property to Arnold Hannah. The district court summarized the evidence Markgraf and Shanahan presented in support of their claims, including the 1965 grant deed conveying the property to "Arnold Hannah, Trustee," various oil and gas leases and deeds related to the property that Arnold Hannah signed as "Trustee," letters signed by Arnold Hannah and a statement signed by Kathryn Nelson containing information about Arnold Hannah holding the property as trustee and distributing the proceeds from oil and gas leases and the sale of some of the property to the alleged beneficiaries, a copy of a 1981 check register showing checks to Kathryn Nelson and Robert L. Hannah for "share of land sale and lease monies," a 2002 letter from Kathryn Nelson to the Register of Deeds of Mountrail County stating she wanted to renew the mineral rights for some of the property, and various oil and gas leases from 2001, 2007, and 2008 leasing a portion of the subject min-

erals signed by Kathryn Nelson and the other Hannah siblings' descendants.

[¶ 25] The court considered Welker and Ostrem's argument and supporting evidence, stating:

Welker asserts that the evidence Markgraf relies upon to support their implied trust claim does not rise to the level of clear and convincing, especially in light of the contrary evidence that Arnold's siblings agreed that Arnold would retain the minerals in consideration for his substantial time and effort in managing all of the assets of W.J. Hannah, referring to a letter written by Arnold dated 12–30–89 to Robert Leroy Hannah, Robert Leroy's son Allen, and Kathryn Nelson in which Arnold said:

As you may know, after all the North Dakota land was sold, the bills paid, etc., and proceeds devided (sic) among all concerned, *it was decided by your father [Robert Hannah] and Kathryn that I should have what remained of the mineral rights* on the land, for all the time & legal expense of settling the folk's estate, which took some amount of time & expense, taking care of the folks while they were here, managing the farm, selling it, etc. They had deeded everything to me, knowing that I would devide (sic) the net balance equally, which I have done. (Emphasis added).

In addition, Welker argues there is another explanation for Arnold's use of the descriptive word "Trustee" on the various documents.

For example, on March 23, 1967, Arnold wrote to his brother Donald, explaining:

Shortly after Mothers (sic) death, it was felt that rather than have all the monies, properties, etc., transferred to me by authority of the Power of Attorney, personally, as Arnold Hannah,

and which had been done prior to her death, it might tend to confuse my other personal, and business holdings and interests, taxwise and otherwise, so we decided it should be made in the name of Arnold Hannah, Trustee, and that way I could keep everything separate and in good order with the minimum amount of Bookkeeping.

Rather than go ahead and file transfers to me which had been made by Power of Trustee, we made up new Bills of Sales, transfers, deeds, etc. and so long as Dad was able and willing to do so, we had most of the transfers made direct from him, as owner and survivor to me, Arnold Hannah, Trustee. In addition, it was felt by all parties concerned that this would be a simpler and less cumbersome method of handling affairs.

In addition, in response to a letter Arnold received from Shell Oil Company on October 5, 1971, Arnold said:

Note: Just for the record, there is no trust agreement as such. This property was deeded to me along with other property by my parents W.J. and Mary Hannah, and with the full knowledge and consent of other members of the family, and with no strings attached. The name Arnold Hannah, Trustee, was used, merely to distinguish from other properties owned by me.

. . . .

Welker asserts that even if there was a trust, Arnold's retention of the minerals for himself after the surface was sold and proceeds distributed to family members as compensation for his services did not "thwart equity, as it comports with the principle in estate law that a personal representative is entitled to reasonable compensation for his services."

Welker further asserts that when Arnold wrote to Robert Leroy, Allen, and Kathryn in 1989 about keeping the minerals for himself for all the time and expense for settling the folks' estate, minerals were not as valuable as they are today and retaining them was reasonable compensation for his services.

[¶ 26] The district court considered the parties' arguments and the evidence presented and found a resulting trust was created by the 1965 grant deed and the trust was not altered by a subsequent agreement:

Under the undisputed facts of this case, it is the Court's finding that there is clear and convincing evidence that a resulting trust was created at the time the subject property was conveyed to Arnold by his father, W.J. Arnold's conduct in handling the subject property, including distribution of the monies derived from oil and gas leases to family members in 1981, is consistent with an intent by W.J. that a trust relation should result from his 1965 conveyance to Arnold.

In spite of Arnold's letter to Kathryn, Robert Leroy, and Allen in 1989, stating that Robert Leroy's father Robert and Kathryn agreed, at some time prior to Robert's death in 1985, that Arnold would keep the remaining minerals for all the time and expense of settling W.J. and Mary's estate, the subsequent conduct of Welker, Ostrem, Kathryn, Robert Leroy, and Margaret Rehmer in executing oil and gas leases on portions of the subject minerals in 2001 and 2007, is not consistent with such an agreement. Kathryn's 2002 letter to the Register of Deeds of Mountrail County, stating she wanted to renew the mineral rights for the next 20 years on Section 17 of Township 154, Range 93 is, likewise, not consistent with an agreement that the minerals were held by Arnold alone.

(Citations to the record omitted.)

[¶ 27] The district court considered the evidence presented in support of the motions for summary judgment and made inferences from that evidence. Welker and Ostrem argue other inferences can be made from the evidence. They claim Arnold Hannah did not have a legal obligation to distribute proceeds from the mineral rights to his relatives but he did so out of a moral obligation and Arnold Hannah and his siblings agreed he should keep the mineral interests sometime before 1985. They contend the oil and gas lessee entered into leases with various members of the Hannah family under a mistaken belief that the relatives retained a mineral interest or out of caution and to ensure the lessee obtained full lease rights. They claim Kathryn Nelson sent the 2002 letter to the register of deeds because she forgot she agreed Arnold Hannah should keep the mineral interests. They argue other evidence conflicts with the evidence the court relied on and indicates there was never an understanding Arnold Hannah was required to distribute the mineral interests to his relatives, including Arnold Hannah's 1971 note to Shell Oil Company that "there is no trust" and the property was transferred to him with "no strings attached," a letter explaining the property was transferred to "Arnold Hannah, Trustee" to avoid confusion with his other personal and business holdings, and Arnold Hannah's 1989 letter explaining he was keeping the mineral interests as compensation. They also argue the evidence is inconsistent.

[¶ 28] "A motion for summary judgment is not an opportunity to conduct a mini-trial." *Hamilton*, 2012 ND 238, ¶ 13, 823 N.W.2d 754 (quoting *Farmers Union Oil Co. v. Smetana*, 2009 ND

74, ¶ 11, 764 N.W.2d 665). Summary judgment is inappropriate if the court must draw inferences and make findings on disputed facts to support the judgment. *Hamilton*, at ¶ 13. In deciding a motion for summary judgment, the district court may not "weigh the evidence, determine credibility, or attempt to discern the truth of the matter...." *Northern Oil & Gas, Inc. v. Creighton*, 2013 ND 73, ¶ 11, 830 N.W.2d 556 (quoting *Smetana*, 2009 ND 74, ¶ 10, 764 N.W.2d 665).

[¶ 29] Reasonable differences of opinion exist about the inferences to be drawn from the evidence. There was also conflicting evidence which required the court to weigh the evidence or attempt to discern the truth of the matter in order to reach its decision. Because we are reviewing the district court's decision under the standard of review for summary judgment and not the standard of review governing bench trials, we conclude the court erred in finding an implied trust was created and the trust was not altered by a subsequent agreement.

C

[¶ 30] Welker and Ostrem argue the district court erred by failing to grant summary judgment in their favor because Markgraf and Shanahan's claims are barred by the twenty-year statute of limitations for quiet title claims under N.D.C.C. § 28-01-04. They contend the statute of limitations applies to all quiet title actions and it expired by 2010 at the latest.

[¶ 31] Section 28-01-04, N.D.C.C., limits actions for recovery or possession of real property, stating "No action for the recovery of real property or for the possession thereof may be maintained, unless the plaintiff, or the plaintiff's ancestor, predecessor, or grantor, was seized or possessed of the premises in question within twenty years before the commencement of such action." The district court concluded the statute did not apply because this was not a quiet title action based on adverse possession or acquiescence claims. Although N.D.C.C. § 28-01-04 is commonly thought of as the statute of limitations for quiet title actions based on adverse possession and acquiescence, *see James v. Griffin*, 2001 ND 90, ¶ 12, 626 N.W.2d 704, this Court has also indicated it applies in other types of quiet title actions. *See Wehner v. Schroeder*, 335 N.W.2d 563, 566 (N.D.1983) (deciding whether N.D.C.C. § 28-01-04 barred quiet title action for reformation of a deed). The plain language of the statute states it applies in actions for the recovery or possession of real property. This is an action to recover real property and N.D.C.C. § 28-01-04 applies.

[¶ 32] A party is barred from bringing an action for the recovery or possession of real property, unless the party was seized or possessed of the property within twenty years before bringing the action. *See James*, 2001 ND 90, ¶ 12, 626 N.W.2d 704; *Haas v. Bursinger*, 470 N.W.2d 222, 223 (N.D.1991). The twenty-year period is measured back from the commencement of the action. *James*, at ¶ 12.

[¶ 33] Markgraf and Shanahan brought this action to quiet title in 2013. They claim the property has been held in a resulting or constructive trust since 1965 when the grant deed was executed. The possession of property by a trustee is on behalf of the beneficiaries and the trustee's possession is presumed to be that of the beneficiaries. *Hodny v. Hoyt*, 243 N.W.2d 350, 356 (N.D.1976). Statutes of limitation generally do not run between the trustee and beneficiaries unless the trust has been repudiated. *Id.* at 356, 359 (stating N.D.C.C. § 28-01-04 did not apply because there was no repudiation of the trust). "In order to constitute a repudia-

tion there must be something said or done by the trustee in open contravention of the terms of the trust, and of such character that the relations of the parties will become and continue hostile." *Id.* at 357 (quoting *Grand Lodge of Iowa of the Indep. Order of Odd Fellows v. Osceola Lodge No. 18, Indep. Order of Odd Fellows*, 178 N.W.2d 362, 369 (Iowa 1970)). If the court finds an implied trust was created, Welker and Ostrem argue the trust was repudiated some time before 1985 when Arnold Hannah, Kathryn Nelson, and Robert Hannah agreed Arnold Hannah would keep the mineral interests as compensation for his work related to W.J. and Mary Hannah's estate. Markgraf and Shanahan argue there was evidence Kathryn Nelson possessed the property within twenty years before commencement of the action.

[¶ 34] Whether N.D.C.C. § 28-01-04 applies will depend on whether an implied trust was created and, if a trust exists, whether it was repudiated. It is not appropriate to decide this issue on summary judgment.

### D

[¶ 35] Although the parties contend the evidence is undisputed and no further evidence would likely be presented at trial, the issues in this case are not appropriate to be decided on summary judgment. We are not reversing the district court's decision because the evidence does not support the court's findings; rather, reversal and remand is required under our standards for summary judgment. On remand, the case may be submitted to the district court for a trial on the same record if the parties provide a stipulation of facts and exhibits, together with any argument the court permits, for trial based on the record submitted. *See Golden v. SM Energy Co.*, 2013 ND 17, ¶ 18, 826 N.W.2d 610; *Hamilton,*

2012 ND 238, ¶ 20, 823 N.W.2d 754 (Crothers, J., concurring specially).

### III

[¶ 36] We conclude summary judgment was not appropriate, and we reverse and remand for further proceedings consistent with this decision.

[¶ 37] DANIEL D. NARUM, D.J., DALE V. SANDSTROM, DANIEL J. CROTHERS and LISA FAIR McEVERS, JJ., concur.

[¶ 38] The Honorable DANIEL D. NARUM, D.J., sitting in place of KAPSNER, J., disqualified.