2017 ND 219

Kathleen MARKGRAF and Marilyn Shanahan, Plaintiffs and Appellees

v.

Connie WELKER, Vicki Ostrem, Defendants and Appellants

and

Margaret Rehmer, Robert Leroy Hannah, Jr., Robert Hannah, Cheryl Hannah, Donna Shilliam, William J. Hannah, Estate of William J. Hannah, Mary Hannah, Estate of Mary Hannah, Robert L. Hannah, Estate of Robert L. Hannah, Alan Hannah, Estate of Alan Hannah, Kathryn Hannah Nelson, Barbara Eggert, Estate of Barbara Eggert, Arnold Hannah, Estate of Arnold Hannah, Donald Hannah, Estate of Donald Hannah, Larry Erickson, Estate of Larry Erickson, and all other persons unknown claiming any estate interest in or lien or encumbrance upon the real property described in the Complaint, whether as heirs, legatees, personal representatives, devisees, creditors or otherwise, Defendants

No. 20160449

Supreme Court of North Dakota.

Filed 9/7/2017

Andrew D. Cook, West Fargo, ND, for plaintiffs and appellees.

Robert J. Pathroff (argued), Bismarck, ND, and David T. Hermanson (appeared), Fargo, ND, for defendants and appellants.

VandeWalle, Chief Justice.

[¶1] Connie Welker and Vicki Ostrem appealed from a district court judgment deciding ownership of mineral interests in Mountrail County. Welker and Ostrem argue the court erred in finding that a resulting trust exists and that the trust was not repudiated. We conclude the district court did not err in finding a resulting trust exists and Welker and Ostrem failed to establish the trustee's repudiation of the trust. We affirm.

## I

[¶2] Kathleen Markgraf and Marilyn Shanahan brought an action against Welker and Ostrem to quiet title to minerals in and under property located in Mountrail County, described as:

Township 154 North, Range 93 West
Section 17: N1/2NW1/4, SW1/4NW1/4, NW1/4SW1/4
Township 156 North, Range 93 West
Section 25: SW1/4
Township 156 North, Range 92 West
Section 19: E1/2NW1/4, Lots 1 & 2
Lots 1, 2, 3, and 4, of Block 8, Original Townsite of Ross

Markgraf and Shanahan alleged W.J. Hannah owned 100% of the surface and minerals when he conveyed the property to "Arnold Hannah, Trustee" by grant deed in 1965, intending to create a family trust and appointing his son, Arnold Hannah, as trustee. Markgraf and Shanahan are descendants of Kathryn Nelson, W.J. Hannah's daughter and Arnold Hannah's sister. They claimed W.J. Hannah intended Arnold Hannah would hold the legal title to the property in trust for the benefit of himself; his siblings, Kathryn Nelson and Robert L. Hannah; and Margaret Rehmer, the only child of his deceased brother, Wilbert Hannah. They claimed Arnold Hannah held himself out as trustee in

dealings related to the property, kept an accounting of the income and expenses related to the property, and made disbursements to the beneficiaries from the proceeds of the trust. They argued a resulting or constructive trust was created and Welker and Ostrem, as Arnold Hannah's heirs, do not have exclusive rights to the property. Welker and Ostrem answered and requested the complaint be dismissed.

[¶3] Welker and Ostrem moved for summary judgment. They argued they were entitled to summary judgment because the 1965 grant deed transferring the property to "Arnold Hannah, Trustee" conveys the title to Arnold Hannah in his individual capacity, the word "Trustee" is surplusage under N.D.C.C. § 47-09-12, and Markgraf and Shanahan's claims for a resulting or constructive trust fail.

[¶4] Markgraf and Shanahan also moved for summary judgment, arguing a resulting or constructive trust was created when the property was conveyed to Arnold Hannah. They claimed that W.J. Hannah intended Arnold Hannah act as a trustee and manage the property for the benefit of the family and that Arnold Hannah acted as a trustee by managing the property, accounting for income and expenses, paying out disbursements from the proceeds of the property to family members, and paying himself a fee for his work related to the property.

[¶5] Welker and Ostrem opposed Markgraf and Shanahan's motion. They argued Markgraf and Shanahan's quiet title claim was barred by the twenty-year statute of limitations contained in N.D.C.C. § 28-01-04, an implied trust was not created, and there is not clear and convincing evidence of an understanding in 1965 that the mineral rights would be divided equally among W.J. Hannah's children.

[¶6] After a hearing, the district court granted Markgraf and Shanahan's motion for summary judgment and denied Welker and Ostrem's motion. The court concluded there was clear and convincing evidence that a resulting trust was created when the property was conveyed to Arnold Hannah. Welker and Ostrem appealed, and this Court reversed and remanded, concluding summary judgment was not appropriate because reasonable differences of opinion existed about the inferences to be drawn from the evidence and there was conflicting evidence which required the court to weigh the evidence or attempt to discern the truth of the matter. *Markgraf v. Welker*, 2015 ND 303, 873 N.W.2d 26.

[¶7] On remand, the parties submitted a stipulated statement of facts and exhibits. The district court held a bench trial and entered judgment quieting title to the minerals as Markgraf and Shanahan requested. The district court considered this Court's prior decision and found a resulting trust was created, the trust was not repudiated, and the statute of limitations did not bar Markgraf and Shanahan's action.

## II

■ [¶8] This Court reviews the district court's findings of fact in a bench trial under the clearly erroneous standard of review. *Border Res., LLC v. Irish Oil & Gas, Inc.*, 2015 ND 238, ¶ 14, 869 N.W.2d 758. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all of the evidence, we are left with a definite and firm conviction a mistake has been made. *Id.* The court's findings are "presumptively correct." *Id.* The "court's choice between two permissible views of the weight of the evidence is not clearly erroneous, and simply because we may have viewed the evidence differ-

ently does not entitle us to reverse the trial court." *Id.* (quoting *Erickson v. Olsen*, 2014 ND 66, ¶ 19, 844 N.W.2d 585). The district court's conclusions of law are fully reviewable. *Irish Oil*, at ¶ 14.

## III

■ [¶9] Welker and Ostrem argue the district court erred in finding there was clear and convincing evidence that a resulting trust was created for the benefit of the family of W.J. and Mary Hannah.

■ [¶10] An implied trust must be established by clear and convincing evidence. *Markgraf*, 2015 ND 303, ¶ 21, 873 N.W.2d 26. "The evidence does not need to be undisputed to rise to the level of clear and convincing, but 'the evidence must be such that the trier of fact is reasonably satisfied with the facts the evidence tends to prove as to be led to a firm belief or conviction.' " *Id.* (quoting *Zundel v. Zundel*, 278 N.W.2d 123, 130 (N.D. 1979)). The existence of an implied trust is a question of fact. *Markgraf*, at ¶ 21.

■ [¶11] There are two types of implied trusts, resulting trusts and constructive trusts. *Markgraf*, 2015 ND 303, ¶ 22, 873 N.W.2d 26. We have explained:

A resulting trust is based on the parties' intentions and exists where the acts or expressions of the parties indicate an intent that a trust relation resulted from their transaction. Imposition of a resulting trust gives a vague or incomplete agreement the substance that was originally intended by the parties. The parties' intention to create a trust must be present at the time the property is conveyed.

A constructive trust is an equitable remedy to compel a person who unfairly holds a property interest to convey it to the rightful owner. Two essential elements must be established to prove the

existence of a constructive trust: unjust enrichment and a confidential relationship.

*Id.* at ¶¶ 22-23 (citations and quotations omitted).

[¶12] The district court found "there is clear and convincing evidence that a resulting trust was created for the benefit of the family of W.J. and Mary Hannah based on the 1965 Grant Deed wherein W.J. [Hannah] conveyed the subject property to 'Arnold Hannah, Trustee' and subsequent treatment of the property by Arnold acting 'as Trustee' and by other family members."

[¶13] Welker and Ostrem argue the district court erred in finding a resulting trust exists because the 1965 grant deed is unambiguous and conveys title to the minerals to Arnold Hannah in his individual capacity under N.D.C.C. § 47-09-12. They argue the word "Trustee" after Arnold Hannah's name in the deed is merely descriptive and Arnold Hannah is deemed to be acting individually.

[¶14] Section 47-09-12, N.D.C.C., provides guidance in interpreting certain words in deeds transferring property, stating:

> If any instrument relating to real or personal property shall be executed by or to any person as trustee, guardian, executor, administrator, or in any other representative capacity, and shall fail to identify clearly the beneficiary by name and the nature of the trust, the qualifying words in such instrument shall be treated as surplusage and as description only of the person by whom or to whom the instrument was executed.

*See also* North Dakota Title Standards (2014), Standard 10-06 ("Identifications such as 'trustee' ... without further identification of the beneficiary by name or the nature of the trust, are merely descriptive

and the person is deemed to be acting in an individual capacity").

[¶15] We agree with Welker and Ostrem that the use of the word "trustee" in the deed alone was not sufficient to create a trust. However, the district court's decision about the existence of a trust was not based solely on the designation of Arnold Hannah as trustee in the deed. Rather, the court properly considered the facts and circumstances of the case and found the use of the word "trustee" in the deed was evidence of an intent to create a trust at the time the property was conveyed.

[¶16] Here, further evidence supports the district court's finding that there was an intent to create a trust for W.J. Hannah's family. In 1970, 1981, and 1989, Arnold Hannah executed oil and gas leases as "Arnold Hannah, Trustee." Arnold Hannah and his siblings or their heirs each signed a ratification of the 1970 lease, and the ratifications were recorded. Arnold Hannah sold the surface property and reserved the minerals as Arnold Hannah, Trustee. Most of the deeds conveying the surface contain a provision stating, "reserving, additionally, unto Seller in his capacity as Trustee, one hundred percent (100%) of the oil, gas and other minerals ...." The record also includes a copy of a statement about the property, dated October 27, 1981, and signed by "Arnold Hannah, Trustee." The statement shows the income or proceeds from the sale of some of the property was disbursed among the siblings, with Kathryn Nelson, Robert Hannah, and Arnold Hannah each receiving $33,500. Arnold Hannah wrote a letter dated December 30, 1989, to Robert Hannah's sons, Robert Hannah Jr. and Alan Hannah, and Wilbert Hannah's daughter, Margaret Rehmer, stating:

> As you may know, after all the North Dakota land was sold, the bills paid, etc, and proceeds devided [sic] among all

concerned it was decided by your father & Kathryn, that I should have what remained of the mineral rights on the land, for all the time & legal expense of settling the folk's estate, which took some amount of time & expense, taking care of the folks while they were here, managing the farm, selling it, etc. They had deeded everything to me, knowing that I would devide [sic] the net balance equally, which I have done. However, after a lot of negotiation, I managed a good deal on a bonus, so will share with you and Allen, Margie, and Kathryn. I don't expect anything more in the future.

CK# 6123 R.L.H. 434.00 CK# 6124 Allen 434.00 CK# 6125 Margie 434.00

Bobby: Would you please mail a copy of this, along with the check to Allen - I don't have his address.

Arnold Hannah's letter states W.J. and Mary Hannah deeded all of their property to him so he could divide and distribute the property equally with his siblings or their descendants. The evidence supports the court's findings that the parties intended to create a trust when the property was conveyed to Arnold Hannah and that a resulting trust was created.

[¶17] Welker and Ostrem also argue Markgraf and Shanahan were required to prove Arnold Hannah wrongfully retained or held the mineral interests in violation of an agreement, understanding, or confidential relationship. They claim Markgraf and Shanahan did not prove a wrongful taking or unlawful holding, and therefore there is no wrongdoing or injustice to be remedied by imposing an implied trust. To the extent Markgraf and Shanahan were required to prove a wrongful taking or violation of an agreement or understanding, they have met that requirement. Welker and Ostrem's assertion of sole ownership is a wrongful taking or holding in violation of an agreement or understanding, and the district court's decision finding there is a resulting trust is a remedy for that wrongful taking or holding.

[¶18] Although Welker and Ostrem argue there is conflicting evidence, the district court's choice between two permissible views of the weight of the evidence is not clearly erroneous. *See Irish Oil*, 2015 ND 238, ¶ 14, 869 N.W.2d 758. The evidence supports the district court's findings and we are not left with a definite and firm conviction a mistake has been made. We conclude the court's findings about the existence of a resulting trust are not clearly erroneous.

IV

[¶19] Welker and Ostrem argue the district court erred in finding Arnold Hannah did not repudiate the trust. They argue Arnold Hannah repudiated the trust in the December 30, 1989, letter and the statute of limitations bars Markgraf and Shanahan's claims.

[¶20] The statute of limitations generally does not run between the trustee and beneficiaries until the trustee clearly repudiates the trust. *Markgraf*, 2015 ND 303, ¶ 33, 873 N.W.2d 26; *Zundel*, 278 N.W.2d at 131-32. The statute of limitations does not begin to run as long as there is a recognition of the trust or a repudiation and a subsequent recognition by the trustee. *Zundel*, at 132. "In order to constitute a repudiation there must be something said or done by the trustee in open contravention of the terms of the trust, and of such character that the relations of the parties will become and continue hostile." *Markgraf*, at ¶ 33 (quoting *Hodny v. Hoyt*, 243 N.W.2d 350, 357 (N.D. 1976)). "The mere failure of a trustee to perform his duty is not sufficient to repudiate a resulting trust, rather there must be a distinct act of repudiation amounting

to a denial of its existence." *Zundel*, at 132. This Court has said, "before the statute of limitations began to run against the beneficiary on a claimed repudiation by the trustee the beneficiary must have had knowledge of the repudiation . . . ." *Hodny*, at 358. The party claiming repudiation has the burden to show a repudiation of the trust. *See id.* at 358, 361.

[¶21] The district court found Arnold Hannah did not repudiate the trust. The court stated it did not know what conversations took place between Arnold Hannah, Robert Hannah, and Kathryn Nelson before Robert Hannah's death and the only evidence was the documents submitted by the parties. The court explained the December 30, 1989, letter refers to an agreement by Robert Hannah and Kathryn Nelson that Arnold Hannah would retain what remained of the mineral rights as payment for the time and legal expense he incurred settling W.J. and Mary Hannah's estate. The court said:

> The last parcel of the subject property, parcel 1, was sold by "Arnold Hannah, Trustee" on August 6, 1982, more than six years before Arnold [Hannah] wrote his December 30, 1989, letter. In spite of the fact that Arnold [Hannah] made reference in his letter to an agreement between himself, Robert [Hannah], and Kathryn [Nelson] that he should have the remaining minerals—an agreement that did not include Margaret Rehmer, the only heir to Wilbert [Hannah]—Arnold [Hannah] nevertheless negotiated a bonus and distributed it among the family. The action of again dividing proceeds among the family cannot be said to be "something said or done by the trustee in open contravention of the terms of the trust." Instead, [Arnold Hannah's] action was in compliance with the implied trust, and there is no evidence that Arnold [Hannah] did anything in contravention of the terms of the implied trust

after December 30, 1989, and before his death in 1993.

The court found Arnold Hannah did not repudiate the trust and the statute of limitations is not a bar to Markgraf and Shanahan's action.

[¶22] Ostrem and Welker allege the December 30, 1989, letter is evidence Arnold Hannah repudiated the trust. They claim Arnold Hannah, Robert Hannah, and Kathryn Nelson agreed at some point that Arnold Hannah would retain the minerals as payment for the time and expense he incurred settling the estate and caring for W.J. and Mary Hannah. They claim the letter put all of the parties on notice that Arnold Hannah was repudiating the trust. Although the letter is not addressed to Kathryn Nelson, they contend there is evidence the letter was sent to her because they claim the letter states, "And Kathryn, I don't expect anything more in the future."

[¶23] The December 30, 1989, letter is the only evidence Ostrem and Welker allege supports their repudiation argument. Even if the letter is evidence Arnold Hannah intended to repudiate the trust agreement, there is no evidence all of the parties received the letter. The letter is addressed to Robert Hannah's sons, Robert Hannah Jr. and Alan Hannah, and Wilbert Hannah's daughter, Margaret Rehmer. The letter requests Robert Hannah Jr. send a copy of the letter to Alan Hannah. There is no evidence Alan Hannah received a copy of the letter.

[¶24] Furthermore, the letter is not addressed to Kathryn Nelson, and there is no evidence the letter was sent to her. The record includes a letter dated January 17, 1990, from Arnold Hannah to Kathryn Nelson with a note stating, "$1300 ck # 6122." The check number is in sequence with the checks for Robert Hannah Jr.,

Alan Hannah, and Margaret Rehmer noted on the December 30, 1989, letter, and is for an amount about equal to the total of the other checks. The December 30, 1989, letter does not mention Kathryn Nelson's check for her share of the bonus, and the letter is not addressed to her. The evidence does not support Welker and Ostrem's claim that Kathryn Nelson was sent the December 30, 1989, letter. The January 17, 1990, letter does not indicate Arnold Hannah is repudiating the trust or mention any agreement that he would retain the minerals. The evidence does not support Ostrem and Welker's claim that Arnold Hannah informed all of the trust beneficiaries that he was repudiating the trust.

[¶25] The December 30, 1989, letter states Robert Hannah and Kathryn Nelson decided Arnold Hannah should keep the mineral rights on the land as payment for the time and expense he incurred settling the estate and caring for W.J. and Mary Hannah. However, even if this letter is evidence that Kathryn Nelson and Robert Hannah may have previously agreed Arnold Hannah should retain the mineral interests, there is no evidence Margaret Rehmer was a party to that agreement. Furthermore, Arnold Hannah acted in contravention of any agreement by continuing to disburse funds from the property after the alleged agreement occurred. The letter states that the subject of the letter is "Share of Bonus Lease - 300 Acres N.D. Land," and that Arnold Hannah sent each beneficiary of the trust a check for their share of the bonus. He continued to act in accordance with the terms of the trust after the alleged agreement occurred.

[¶26] Arnold Hannah died in 1993, and there is no evidence he ever made any statements or took any action in open contravention of the terms of the trust after the December 30, 1989, letter. Ostrem and Welker claim there is no evidence Arnold Hannah made any further distributions to any family members after December 30, 1989. But there is also no evidence about any assets to distribute, including whether Arnold Hannah kept any payments he received from any of the mineral leases.

[¶27] There is evidence the other family members continued to act in accordance with the terms of the trust after the 1989 letter. In 2001, Welker, Ostrem, Kathryn Nelson, Robert Hannah Jr., and Margaret Rehmer leased the minerals. Kathryn Nelson wrote a letter dated July 2, 2002, to the Mountrail County register's office about renewing the mineral rights. In 2007 and 2008, Margaret Rehmer, Ostrem, Welker, Kathryn Nelson, and Robert Hannah Jr. each executed an oil and gas lease. In 2012, Markgraf, as the power of attorney for her mother, Kathryn Nelson, filed a statement of claim of mineral interest with the Mountrail County Recorder as "Kathryn Nelson, Trustee."

[¶28] There was no evidence Arnold Hannah said or did anything in open contravention of the terms of the trust and acted in a manner amounting to a denial of the trust's existence. We conclude evidence supports the court's findings, and the court's findings are not clearly erroneous. We further conclude the court did not err in finding the trust was not repudiated and the statute of limitations did not preclude Markgraf and Shanahan's action.

V

[¶29] We affirm the judgment.

[¶30] Gerald W. VandeWalle, C.J.

Jerod E. Tufte

Daniel J. Crothers

Lisa Fair McEvers

Mary Muehlen Maring, S.J.

[¶31] The Honorable Mary Muehlen Maring, S.J., sitting in place of Kapsner, J., disqualified.

[¶32] The Honorable Jon J. Jensen was not a member of the Court when this case was heard and did not participate in this decision.